UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIRGAS USA, LLC, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 5:25-cv-3833 |
| | : | |
| TEAMSTERS LOCAL 773, and | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS, | : | |
|     Defendants. | : | |

**O P I N I O N**
Local 773 Motion to Dismiss, ECF No. 10 - Denied
IBT Motion to Dismiss, ECF No. 12 - Granted

**Joseph F. Leeson, Jr.**                                                                                       **December 19, 2025**
**United States District Judge**

I.  INTRODUCTION

Plaintiff Airgas USA, LLC initiated this action against Defendants Teamsters Local 773 and the International Brotherhood of Teamsters ("IBT") pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C § 185, for breach of a collective bargaining agreement ("CBA") between Airgas and Local 773. Airgas alleges that IBT acted in concert with Local 773 to encourage employees to participate in a nationwide strike, in violation of a no-strike provision in Article 13 of the CBA. Local 773 and IBT have separately filed Motions to Dismiss the Complaint. For the following reasons, Local 773's Motion to Dismiss is denied, but IBT's Motion is granted, with leave to Airgas to amend its claims against IBT.

## II. BACKGROUND

### A. Factual Allegations

Airgas is a corporation that supplies industrial, medical, and specialty gases, whose industry affects commerce within the meaning of Section 301 of the LMRA. Compl. ¶ 8. IBT and Local 773 are labor organizations representing employees in an industry affecting commerce within the meaning of the LMRA. *Id.* ¶¶ 9-10. IBT Local 701 represented workers at Airgas's New Jersey facility, while Local 773 was the exclusive bargaining representative for Airgas's employees at the Allentown facility. *Id.* ¶¶ 10, 15. Airgas and Local 773 entered into a CBA, which was effective from April 9, 2022, until April 8, 2026. *Id.* ¶ 13. Article 13 of the CBA provides, in part:

> **Section 1 - No Strike, No Lock Out:** Under no circumstances will the Union or employees engage in, instigate, promote, cause, sponsor, condone, permit, encourage, or take part in any strike, slowdown, sympathy strike, jurisdictional strike, withholding of services, work stoppage, picket, curtailment of work, reduction of production, or interference of any kind with the operations of the Employer during the term of this Agreement. The Employer agrees not to conduct a lockout of its employees during the term of this Agreement.
>
> **Section 2 - Pickets:** Aside from any other language in this Agreement to the contrary, it shall not be a violation of this Agreement, and it shall not be cause for discharge, disciplinary action, or permanent or temporary replacement in the event an employee refuses to enter upon any property involved in a primary labor dispute or refuses to go through or work behind any primary line, including the primary picket line of the Union party to this Agreement and including primary picket lines at the Employer's places of business. Furthermore, the Employer shall not direct any employee to cross a primary picket line.

*Id.* ¶ 14; CBA, ECF No. 10-2.

On June 2, 2025, IBT Local 701 (in New Jersey) was unable to reach an agreement with Airgas prior to the expiration of their CBA and went on strike.[1] *See* Compl. ¶¶ 15-18. Local

---

[1] The strike was ongoing when the Complaint was filed on July 24, 2025. *See* Compl. ¶ 18.

773's shop steward, Joe Swanson, warned employees at the Allentown facility that a picket line could appear outside the Allentown facility. *Id.* ¶ 26. She advised employees that the picket line would work only if everyone participates, that the employees should drive by the picket line, and that they should call Airgas to say they would not cross the picket line. *Id.* ¶¶ 26-27. Local 773 and IBT informed employees at the Allentown facility that they should not talk about anything told to them about the picket line. *Id.* ¶ 28.

On June 25, 2025, picketers were outside Airgas's Allentown facility with signs that said "strike" and Local 701." *Id.* ¶ 19. Airgas employees at the Allentown facility refused to cross the picket line for work. *Id.* The picket line ceased a few days later, but returned on July 8, 2025, at which time Airgas employees at the Allentown facility again refused to cross the picket line to work. *Id.* ¶ 20. The next day, Airgas sent a letter reminding Local 773 of its obligations under the CBA and requesting information about the ongoing picketing and the Union's involvement in the picketing. *Id.* ¶ 21. Thereafter, employees crossed the picket line. *Id.* ¶ 22. The picket line ceased on July 12, 2025. *Id.* ¶ 23.

On July 14, 2025, Local 773 responded to Airgas's July 9, 2025 letter, stating that it did not "encourage, request, or instruct employees not to cross the picket line" instead, it "advised members of their rights" and asserted that "some members chose to exercise their rights" not to cross the picket line. *Id.* ¶ 23. Local 773 further stated that it "has no specific information confirming the origin of the pickets at the Employer's Allentown facility" but "upon information and belief, the pickets honored by the individual employees at the Employer's Allentown Facility [were] consistent with Article 13 of the CBA." *Id.*

"On July 22, 2025, IBT publicly communicated that '[t]he Teamsters have expanded their nationwide strike against Airgas,' from facilities in North Brunswick, New Jersey . . . to

locations in other states, including Pennsylvania." *Id.* ¶ 24.  "The IBT stated that Airgas is 'facing a major disruption to its operations' as a result of these activities.  *Id.*  Also on July 22, 2025, picketers returned to the front of the Allentown facility.  *Id.* ¶ 25.  Airgas's employees at the Allentown facility refused to cross the picket line to appear for work.  *Id.*

During the strike, Defendants paid employees up to $1,000 per week if they did not cross a picket line.  *Id.* ¶ 29.  Airgas, which serviced, *inter alia*, medical facilities that require Airgas's products to treat patients, incurred additional costs exceeding $200,000 in order to continue operating and delivering its products during the strikes.  *Id.* ¶ 31.  Airgas alleges its damages resulted from Defendants' actions, which violated Article 13 of the CBA.  *Id.* ¶¶ 30, 33.  Airgas requests that "this Court issue a declaratory judgment that Defendants, by their acts and conduct, have breached Article 13 of the CBA," and "award Plaintiff monetary damages caused by Defendants' breaches of the CBA."  *Id.* at pp. 7-8 (prayer for relief).

### B. Procedural History

On July 24, 2025, Airgas filed a Complaint against Local 773 and IBT, asserting two counts: (1) declaratory judgment; and (2) breach of contract pursuant to Section 301 of the LMRA.  *See* Compl.[2]  On August 18, 2025, Local 773 and IBT separately filed a Motion to Dismiss the Complaint.  *See* ECF Nos. 10, 12.  Airgas filed responses on September 2, 2025, *see* ECF Nos. 16-17, to which replies were filed on September 9, 2025, *see* ECF Nos. 19-20, and sur-replies on September 18, 2025, *see* ECF Nos. 25-26.

On September 23, 2025, this Court granted the joint motion of Local 773 and IBT to stay the case pending conclusion of the arbitration proceedings involving whether Airgas's

---

[2] This Court has jurisdiction pursuant to 29 U.S.C. § 185(a), (c) (Suits by and against labor organizations).

employees violated Article 13 of the CBA. See ECF No. 30. This Order was subsequently vacated on November 3, 2025, and the stay was lifted. See ECF No. 34.

## III. LEGAL STANDARDS

### A. Motion to Dismiss, Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)).  Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**      **Section 301 of the LMRA- Breach of Contract**

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations. . . ." 29 U.S.C. § 185(a).[3]  "To fall within that section it is necessary only that the plaintiff be asserting a violation of a contract between an employer and a union." *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 552 (3d Cir. 1983).  "Absent a contract, jurisdiction over claims arising from an employer-labor organization relationship is not vested in the federal courts." *United Mine Workers Int'l Union v. G.M. & W. Coal Co.*, 642 F. Supp. 57, 60 (W.D. Pa. 1985).

Section 301 also "affords subject matter jurisdiction for declaratory relief as to the meaning of the contract." *Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre*, 647 F.2d

---

[3] "Although the Board has occasion to interpret collective-bargaining agreements in the context of unfair labor practice adjudication, . . . the Board is neither the sole nor the primary source of authority in such matters.  Arbitrators and courts are still the principal sources of contract interpretation." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202-03 (1991) (internal quotations omitted).

372, 380 (3d Cir. 1981). "Furthermore, cases like this [brought by an employer against a union alleging breach of a no-strike provision in a CBA] are routinely brought under 29 U.S.C. § 185 and the Declaratory Judgment Act." *J. Ambrogi Food Distribution Inc. v. Teamsters Local Union No. 929*, 595 F. Supp. 3d 352, 363 (E.D. Pa. 2022).

IV.   ANALYSIS

    A.   **Local 773's Motion to Dismiss is denied.**

Local 773 asserts that because the actions of the Allentown facility employees (of not crossing the picket line[4]) were permitted under Section 2 of Article 13 of the CBA, Local 773 may not be held liable under Section 1. This Court finds Local 773's argument to be unavailing because these sections in the CBA govern different conduct. Section 1 prevents both the Union and employees from "engag[ing] in, instigat[ing], promot[ing], caus[ing], sponsor[ing], condon[ing], permit[ting], encourage[ing], or tak[ing] part in any strike." CBA, Art, 13. Section 2, on the other hand, explains that employees, who are not taking part in the strike,[5] may not be "discharge[d], discipline[ed], or . . . replace[d]" for refusing to cross a picket line, nor may the employer "direct any employee to cross a primary picket line." *See id.*

There would not be a picket line without a strike; therefore, the contention of Local 773 that because the employees had the right not to cross the picket line, there was no "strike" or "slowdown" under Section 1, *see* Local Mot. 11, is also unpersuasive. Section 1 is not limited to slowdowns or to strikes by the Allentown facility employees. *See* CBA, Art, 13 (prohibiting conduct relating to "*any* strike"). Although Local 773 is correct that it may not be held liable

---

[4] Local 773's suggestion that the employees' not crossing the picket line is "the underlying action complained of," *see* Mot. 9, misconstrues Airgas's Complaint.
[5] *See* CBA, Art, 13, Section 2 ("Aside from any other language in this Agreement to the contrary. . . .")

simply because employees refused to cross the picket line, that is not the breach alleged in the Complaint.  *See, e.g.* Compl. ¶¶ 26, 29.

The Complaint, alleging that Local 773's shop steward, after informing employees that a picket line was established at the facility, "warned employees . . . that the picket line will work only if everyone participates" and also alleging that Defendants paid employees not to cross the picket line,[6] *see id.*, is sufficient at this early stage of the proceedings to create a reasonable inference that Local 773 promoted, sponsored, condoned, and/or encouraged the strike in violation of the CBA.  Local 773's contention that it is not liable pursuant to Article 7, Section 2 for the "unauthorized acts" of its steward, *see* Local Mot. 13, is not appropriately before the Court at this stage of the proceedings because it would require this Court to determine that the actions of steward Joe Swanson were unauthorized.  Similarly, its suggestions surrounding the reason why Defendants paid employees who did not cross the picket line, *see id.* at 14-15, are unpersuasive at this early stage of the pleadings where this Court is required to construe the Complaint in the light most favorable to Airgas and may draw all reasonable inferences in favor of Airgas.  *See Iqbal*, 556 U.S. at 678; *Phillips*, 515 F.3d at 233.

Local 773's Motion to Dismiss is therefore denied.[7]

---

[6]    This Court recognizes that Airgas's allegations that Defendants paid employees not to cross the picket line were made against Defendants collectively.  *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) ("Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases."). However, when combined with the specific factual allegations regarding statements made by the shop steward, the allegations are sufficient to state a claim against Local 773.

[7]    Because the declaratory judgment claim is based on Local 773's alleged breach of the CBA, *see* Compl. ¶ 50 (seeking a "declaratory judgment that Defendants, by their acts and conduct, have breached Article 13 of the CBA"), it too is sufficient to state a claim.

Local 773 also seeks to dismiss Airgas's request for attorney's fees, which this Court denies at this early stage of the proceedings.  *See Brown v. Watson*, No. 4:06-CV-2030, 2006 U.S. Dist. LEXIS 112801, at *11 (M.D. Pa. Mar. 12, 2007) (concluding it was premature to

B.     **The claims against IBT are dismissed without prejudice.**

Initially, the Court notes that Airgas does/did not have a contract with IBT. *See SunDance Rehab. Corp. v. Kingston SNF, LLC*, No. 3:12-CV-01162, 2014 U.S. Dist. LEXIS 197376, at *19 (M.D. Pa. Feb. 28, 2014) ("Generally, a breach of contract action may be brought only against a party to the contract."). Nevertheless, Airgas argues that IBT may be held liable for breach under agency and alter-ego theories. *See* Opp. IBT 4, ECF No. 17. *See also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 309 (2010) (holding that the company could "bring a breach-of-contract claim under LMRA § 301(a) against Local as a CBA signatory, and against IBT as Local's agent or alter ego"). Airgas suggests, in its opposition brief, that IBT was acting as Local 773's agent, that IBT and Local 773 were acting as alter egos, and that IBT induced Local 773's breach of the CBA. *See id.* at 5. However, there is absolutely no mention of agency or alter ego in the Complaint, nor are there any allegations in the Complaint that would support such a theory. *See Clowney v. URS/AECOM, URS Fed. Servs.*, No. 3:17-223, 2019 U.S. Dist. LEXIS 169074, at *26 (M.D. Pa. Sep. 30, 2019) (finding summary judgment in favor of the international union appropriate where the plaintiff failed to "put forth any evidence of a common law agency relationship between International and Local").

Rather, in conclusory fashion, *see Iqbal*, 556 U.S. at 678 (holding that conclusory allegations do not suffice to state a claim), the Complaint alleges that "Local 773, acting in concert with the IBT . . . " violated the CBA, *see* Compl. ¶¶ 5, 7, 35. These allegations are insufficient because the Complaint fails to explain how they acted in concert. *See Great W.*

---

address the claim for attorney's fees because the "question of attorney's fees only becomes relevant if Plaintiffs are ultimately successful on the merits of the case").

*Mining & Mineral Co.*, 615 F.3d at 176 (holding that the court does "not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the Defendants . . . and that the plaintiff failed to allege, *inter alia*, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy).

The Complaint is also devoid of any factual allegations showing that IBT "instigated, supported, ratified, or encouraged" Local 773 to breach the CBA.  *See Carbon Fuel Co. v. UMW*, 444 U.S. 212, 218 (1979) (holding that the petitioner failed to prove agency as required by § 301 because there was no evidence that the international union "instigated, supported, ratified, or encouraged any of the work stoppages"); *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1288 (3d Cir. 1991) (holding that an international union may be held responsible for the unlawful conduct of its affiliated local union if it instigated, supported, ratified, or encouraged such conduct).  The only specific[8] allegation attributed to IBT is a statement it made on July 22, 2025, but this statement merely expresses facts- that the "'Teamsters have expanded their nationwide strike against Airgas'" and that "Airgas is 'facing a major disruption to its operations' as a result of these actions."  *See* Compl. ¶ 24.  Furthermore, this statement shows only that IBT knew of the actions of Local 701, who is not a party to the CBA at issue.  Neither the July 22nd statement, nor any other allegations in the Complaint suggest that IBT knew of the statements made by Local 773's shop steward or of any of Local 773's actions.  Even if IBT had such knowledge, knowledge of "illegal activity on the local level is not sufficient to impose a legal duty to intervene on the International Union."  *See Brenner*,

---

[8]  In the absence of any specific factual allegations of misconduct against IBT, Airgas's allegation that Defendants paid employees not to cross the picket line, which was made against Defendants collectively, is insufficient to state a claim against IBT.  *See* footnote 6 *infra*.

927 F.2d at 1289. IBT's statement, alone, does not suggest that it instigated, supported, ratified, or encouraged a work stoppage or any of Local 773's behavior. *See id.* (concluding that the internal union's failure to step in and stop the illegal activity "does not show that the International encouraged, authorized or ratified the actions of the Local"). The Section 301 breach of contract claim against IBT is therefore dismissed without prejudice.[9]

Having dismissed the Section 301 breach of contract claim (Count Two) against IBT, the Declaratory Judgment Act claim (Count One), which seeks a "declaratory judgment that Defendants, by their acts and conduct, have breached Article 13 of the CBA," Compl. ¶ 50, is also dismissed without prejudice as to IBT.

## V. CONCLUSION

The allegations in the Complaint are sufficient to infer that Local 773 promoted, encouraged, and/or condoned the strike at the Allentown facility in breach of Article 13, Section 1 of the CBA. Its Motion to Dismiss is therefore denied. On the other hand, in the absence of any allegations showing that IBT, who is not a party to the CBA, instigated, supported, ratified, or encouraged Local 773 to breach the CBA, its Motion to Dismiss is granted. The claims against IBT are dismissed without prejudice.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[9] *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").