**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| AIRGAS USA, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:25-cv-3833 |
| | : | |
| TEAMSTERS LOCAL 773, and | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS, | : | |
| Defendants | : | |

_____

**O P I N I O N**
**IBT's Motion to Dismiss First Amended Complaint, ECF No. 47 - Granted**

**Joseph F. Leeson, Jr.**                                                    **June 26, 2026**
**United States District Judge**

## I.      INTRODUCTION

This action arises from a breach of contract dispute under § 301 of the Labor

Management Relations Act ("LMRA") 29 U.S.C. §185 between Plaintiff Airgas USA, LLC, and

Defendant Teamsters Local 773, for whom Defendant International Brotherhood of Teamsters

("IBT") is the alleged agent/alter ego.  IBT has filed a Motion to Dismiss Plaintiff's First

Amended Complaint ("FAC").  For the following reasons, IBT's Motion is granted.

## II.     BACKGROUND

### A.      Factual Background

This case involves a dispute surrounding the Collective Bargaining Agreement ("CBA")

between Local 773 and Airgas, who employs Local 773 and is the other signatory to the CBA.

FAC ¶¶ 1, 3, ECF No. 42. The Local 773 CBA contains two relevant provisions under Article

13: (1) a "No Strike, No Lock Out" provision, and (2) a "Pickets" provision – both state the following:

> **Section 1 - No Strike, No Lock Out:** Under no circumstances will the Union or employees engage in, instigate, promote, cause, sponsor, condone, permit, encourage, or take part in any strike, slowdown, sympathy strike, jurisdictional strike, withholding of services, work stoppage, picket, curtailment of work, reduction of production, or interference of any kind with the operations of the Employer during the term of this Agreement. The Employer agrees not to conduct a lockout of its employees during the term of this Agreement.

> **Section 2 - Pickets:** Aside from any other language in this Agreement to the contrary, it shall not be a violation of this Agreement, and it shall not be cause for discharge, disciplinary action, or permanent or temporary replacement in the event an employee refuses to enter upon any property involved in a primary labor dispute or refuses to go through or work behind any primary line, including the primary picket line of the Union party to this Agreement and including primary picket lines at the Employer's places of business. Furthermore, the Employer shall not direct any employee to cross a primary picket line.

*Id.* ¶ 14. Airgas also employed Teamsters Local 701 in New Jersey, with their CBA expiring in May of 2025.[1] *Id.* ¶ 17. Local 701 and Airgas failed to reach a new CBA, resulting in a strike against Airgas. *Id.* ¶¶ 16-18. Members of Local 701 expanded their strike to various Airgas locations, including Allentown, where Local 773 was located and employed. *Id.* ¶ 27.

Airgas alleges that IBT scheduled Zoom conference calls titled "Airgas Strike" and invited members of Local 773. *Id.* ¶ 20. The first call occurred on June 12, was titled "Airgas Strike," and addressed "extending the picket lines nationally with Airgas[.]" *Id.* Afterwards, an IBT representative allegedly worked on and distributed "picket extension handbills" to local unions, including Local 773. *Id.* ¶¶ 21-22. These flyers, sent on June 20, were for the "extension of picket lines at Airgas" and "promoted the idea" that Local 773 members were not required to cross picket lines. *Id.* ¶¶ 22-23 (stating that "YOU have the individual right" and "solidarity is

---

[1]    All dates are in 2025 unless indicated otherwise.

our strength"). These flyers also promised $1,000 per week to those honoring the strike. *Id.* ¶ 24. A representative of Local 701 allegedly sent a letter to IBT outlining strike language and provisions for Teamster Airgas agreements in other states, including Pennsylvania. *Id.* ¶ 25 The letter specifically quoted the Local 773 CBA provisions. *Id.* (referencing provisions in ¶ 14). Airgas alleges that the letter shows IBT was aware of Local 773's CBA provisions, and IBT nevertheless encouraged employees to not cross the picket line in violation of the CBA. *Id.* ¶ 26.

Airgas further alleges that IBT initiated a "coordinated campaign" between IBT and Local 773, through calls and communication, that "caused" a picket line to form at the Airgas Allentown facility. *Id.* ¶ 27. This campaign allegedly encouraged Local 773's employees to not cross the picket line. *Id.* On June 25, picketers from Local 701 appeared outside the Allentown location, and Local 773 employees at this facility refused to cross the picket line until picketing ceased on June 28. *Id.* ¶ 28. Two Zoom conference calls titled "Airgas Picket Line Extension" occurred between IBT and Local 773 members on June 27 and July 7. *Id.* ¶¶ 29-30. Picketing returned again from July 8-12, and Airgas sent a letter to Local 773 reminding it of its CBA obligations. *Id.* ¶ 32. Employees thereafter crossed the picket line on July 9-10, and the picket line ceased on July 12. *Id.* ¶¶ 31-33. Local 773 then replied to the letter, stating it only advised its members of their right not to cross the picket line, and it did not encourage employees to refrain from crossing. *Id.* ¶ 34. A final zoom call titled "Strike Extensions" occurred on July 17. *Id.* ¶ 35.

IBT is also alleged to have publicly communicated on July 22, that "the Teamsters have expanded their nationwide strike against Airgas" from New Jersey into other states, including Pennsylvania, and Airgas is "facing a major disruption to its operations" as a result. *Id.* ¶ 36. On July 22, a picket line returned to Allentown, and Local 773 members refused to cross the picket

line. *Id.* ¶ 37. On August 14, the media coordinator for IBT stated via email that "we previously extended picket lines to multiple Airgas locations." *Id.* ¶ 38.

Airgas alleges that IBT acted as an agent or alter ego of Local 773 by encouraging Allentown employees to engage in work stoppages. *Id.* ¶¶ 39-40. Airgas alleges that Mr. Joe Swanson, Local 773's shop steward, warned employees of picketing and stated it would only work if "everyone participates." *Id.* ¶¶ 41-42 (alleging IBT was aware of picketing at the Allentown facility). Mr. Swanson texted employees to not cross the line and stated these directions were from Local 773. *Id.* ¶¶ 42-46 (showing IBT's involvement insofar as Mr. Swanson distributed the flyer via text). Mr. Bill Heller, Vice President of Local 773, communicated with IBT about employees returning to work and also with Mr. Ron Lake, the President of Local 701, about communications made with Local 773 members. *Id.* ¶¶ 49-51 (omitting responses, if any, from IBT). Mr. Heller then wrote to Mr. Juan Campos, an IBT employee, stating that "I wanted to let you know we righted the ship at our Airgas Allentown Location. We met Saturday and all members attended short one [sic]. We should have all members honoring the extension going forward." *Id.* ¶52. Campos replied, "Thank you for update Brother Heller, as you know 507 and 701 appreciated you and your members." *Id.* The remaining communications in the FAC pertain to communications between Mr. Heller and local members, not IBT. *Id.* ¶¶ 53-56.

Airgas lastly alleges that IBT maintains a "Strike and Defense Fund" that supports union members without work. *Id.* ¶ 57. Members become eligible for payment by honoring a picket line, and local unions must reach out to IBT on their behalf for approval and fund distributions. *Id.* ¶ 58. Mr. Heller reached out to Mr. Mark Ernest, an IBT employee, and received approval for

Local 773 members. *Id.* ¶ 59-60. Several members of Local 773 were then given payments for refusing to cross the picket lines in Allentown on various dates. *Id.* ¶ 61-62.

### B.    Procedural Background

On July 24, 2025, Airgas filed a Complaint against Local 773 and IBT, asserting two counts: (1) declaratory judgment; and (2) breach of contract pursuant to Section 301 of the LMRA.  *See* ECF No. 1.  On August 18, 2025, Local 773 and IBT separately filed a Motion to Dismiss the Complaint.  *See* ECF Nos. 10, 12.  IBT alleged in its Motion to Dismiss that (1) they were not a signatory to the CBA between Local 773 and Airgas, and (2) the Complaint failed to assert sufficient allegations of agency or alter ego necessary to establish liability for IBT. *See* ECF No. 12-1. This Motion to Dismiss was granted, but without prejudice, and Airgas was given leave to amend to establish liability for IBT under either the theory of agency or alter ego. *See* ECF No. 39. Local 773's Motion to Dismiss was denied.  *See* ECF Nos. 38-39.

Airgas has since filed a FAC, attempting to remedy the insufficiencies leading to dismissal of the original Complaint. *See* FAC. Local 773 has filed an Answer to the FAC.  *See* ECF No. 44. IBT has filed a Motion to Dismiss the FAC. *See* Mot. Dismiss FAC, ECF No. 47; Pl's. Resp. to Mot. Dismiss FAC, ECF No. 49; Reply to Resp. Mot. Dismiss, ECF Nos. 50, 51. The Motion to Dismiss is the subject of this Opinion.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss, Rule 12(b)(6) – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right

to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Id.*  (explaining that determining "whether a

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense").

  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits

attached to the complaint, matters of public record, as well as undisputedly authentic documents

if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223,

230 (3d Cir. 2010). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322

(2007) (holding that "courts must consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

(holding that "a document integral to or explicitly relied upon in the complaint may be

considered" (internal quotations omitted)).  Courts may also consider "an undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d

1192, 1196 (3d Cir. 1993).  The defendant bears the burden of demonstrating that the plaintiff

has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d

744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.      Agency – Review of Applicable Law

A claim against a local CBA signatory can be expanded to an international as an agent or alter ego. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 309 (2010). "[An] international union [is] not responsible for the local union's strikes where the international union did not instigate, support, ratify, or encourage any of the local union's work stoppages." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1288 (3d. Cir. 1991) (holding that this standard is required when the international union is not otherwise a signatory to the CBA) (citing *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 218 (1979)); *see also Wilkes-Barre Pub Co. v. Newspaper Guild of Wilkes-Barre, Loc.*, 647 F.2d 372, 382 (3d Cir. 1981) (applying agency to a non-signatory of the CBA for breach of contract or inducement of breach claims). Mere inaction upon complaint or misconduct, or failure to act entirely, is not sufficient under this standard. *Id.* Common law rules of agency apply in determining liability, and agency cannot be inferred from mere affiliation between an international and local union. *Id.*; *Scott v. Graphic Communs. Int'l Union, Local 97-B*, 92 Fed. Appx. 896, 904 (3d Cir. 2004).

### i.      Inaction and Awareness

The Supreme Court has resolved a conflict on this issue originating in the Third Circuit, holding that the international is not required to expend all best efforts to prevent unauthorized strikes violating CBA agreements. *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. at 215. Simple affiliation between both local union chapters and affiliate organizations is likewise insufficient. *Laspina v. Seiu Pa. State Council*, 413 F. Supp. 3d. 383, 390 (M.D. Pa. 2019) (rejecting conclusory allegations of misconduct against institutional union organization and

stating that "bold assertions of control are insufficient to set forth an agency relationship"); *see also Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 973 (2d Cir. 1987) (holding that ratification requires knowledge of material facts and evidence of intent to ratify).

This new standard from *Carbon Fuel Co.* is exemplified in *Brenner*, where the plaintiff alleged that the international "participated in, ratified, encouraged, or affirmed [the] wrongful conduct." *Brenner*, 927 F.2d at 1287. To support allegations of agency, the plaintiff presented pleas and complaints regarding local conduct. *Id.* at 1289. The court held that, even if the international was "intentionally or negligently guilty of tunnel vision," they were not liable under an agency theory since knowledge does not encourage, authorize, or ratify conduct. *Id.* at 1289.

### ii.    Scope and Content of Statements

Meetings or presence of an International's employee is not solely determinative in a finding of agency liability for the international. *See Kerry Coal Co. v. United Mine Workers*, 637 F.2d 957, 963-64 (3d Cir. 1981) (finding that scouting locations with local members, presence during the formation of illegal union conduct, and active travel to the sites of future strikes is enough to establish agency); *see Gateway Coal v. International Union, United Mine Workers of America*, 849 F. Supp. 398, 403 (W.D. Pa. 1994) (showing presence of president joined with supporting statements was sufficient to establish agency); *but see Pittsburgh-Des Moines Steel Co. v. United Steelworkers of America*, 633 F.2d 302, 304-06 (3d Cir. 1980) (holding that when a representative was present but *consistently and exclusively requested compliance* with the CBA, there was no agency relationship created with the international). Furthermore, actions done by the international with a legal purpose are not alone sufficient to establish agency. *C & K Coal Co. v. United States Mine Workers*, 537 F. Supp. 480, 490 (W.D. Pa. 1982), *rev'd on other*

*grounds*, *C & K Coal Co. v. United Mine Workers*, 704 F.2d 690, 696 (3d Cir. 1983) (affirming

other than damages). In *C & K Coal Co.*, the international's employees supplied maps, attended

picketing events and meetings, inquired about the conduct of the local, and released generalized

statements about the strikes. *Id.* at 488-89. Despite an extensive record of conduct, the court held

that since there was legal purpose for the international's actions, the international did not

support, instigate, ratify, or encourage later illegal conduct. *Id.* at 490.

Moreover, "the union must have 'instigated, supported, ratified, or encouraged *the*

*activity complained of.*'" *Feather v. UMW*, 903 F.2d 961, 970 (3d Cir. 1990) (quoting *Kerry*

*Coal Co.*, 637 F.2d at 963) (emphasis added); *see also Clowney v. URS/AECOM, URS Fed.*

*Servs*, 2019 U.S. Dist. LEXIS 169074, at 27 (M.D. Pa. 2019) (applying *Feather* standard)

(finding no agency since statements did not pertain to the specific conduct at issue). The court in

*Feather* requires a separate analysis for both the international and the local. *Id.* Specifically, the

court examined any evidence of agency within the scope of that communication or conduct. *Id.*

Where the conduct exceeds the scope of the international's affirmance, there is no agency. *Id.* at

970-71 (holding affirmance of a legal, primary strike does not constitute affirming later illegal

secondary strikes by the local).

The Supreme Court held that statements without specific mention of actionable conduct

by a co-defendant local union is also insufficient to merit ratification. *United Mine Workers v.*

*Coronado Coal Co.*, 259 U.S. 344, 394 (1922). In *United Mine Workers*, the international's

president made statements specifically referencing other local unions and their conduct, but

made no "specific allusion" to the exact conflict at issue involving the co-defendant local union.

*Id.* Since the specific local action was not specifically implicated in the speech, there was no

finding of agency resulting from the president's statement. *Id.*

### iii.    Payment from Strike Defense Fund

The Supreme Court, in addressing ratification of union conduct, stated the following pertaining to strike relief payments:

> Preliminarily, we note that it would be inconsistent with the fabric of national labor policy to infer ratification from the mere fact that petitioner involved itself in the dispute after the violence had occurred, or from the fact that it carried on some normal union functions, such as provision of strike relief. A union would ordinarily undertake these tasks during the course of a lawful strike. National labor policy requires that national unions be encouraged to exercise a restraining influence on explosive strike situations; and when they seek to do so, they should not for these activities be made to risk liability for such harm as may already have been done.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 738-39 (1966) (overruled on other grounds); *see also Federal Prescription Service, Inc. v. Amalgamated Meat Cutters and Butcher Workmen*, 527 F.2d 269, 277 (8th Cir. 1975) (finding payment from strike defense fund does not amount to ratification). Moreover, when the international's constitution gave provisions for strike relief, the court found no agency. *United Mine Workers*, 259 U.S. at 385. However, when the fund is *specifically* created to *directly* support illegal conduct, the union is then found to have supported and encouraged that activity. *C & K Coal Co.*, 704 F.2d at 696.

### C.    Alter Ego – Review of Applicable Law

The general alter ego standard requires a high bar: "'in order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such.'" *Sheet Metal Workers' Int'l Ass'n Local Union No. 19 v. Main Line Mechanical, Inc.*, 2013 U.S. Dis. LEXIS 32008, at 13-14 (E.D. Pa. Mar. 7, 2013) (applying to LMRA § 301 claim) (quoting *Pearson v. Component Tech. Corp*, 247 F.3d 471, 485 (3d Cir. 2001)). "[T]here is no policy of federal labor law . . . that a parent corporation is bound by its subsidiary's labor contracts simply

because it controls the subsidiary's stock and participates in the subsidiary's management."

*American Bell, Inc. v. Federation of Tel. Workers*, 736 F.2d 879, 887 (3d Cir. 1984).

However, in claims under LMRA, the court applies the lower standard used under the

National Labor Relations Act. *Id.* at 14. This test focuses on the existence of a disguised

continuance or an attempt to avoid obligations under a CBA – an alter ego is present when the

two organizations have "substantially identical management, business purpose, operation,

equipment, customers and supervision, as well as ownership." *Id.* (quoting *Trafford Distrib. Ctr.*

*v. N.L.R.B.*, 478 F.3d 172, 179 (3d Cir. 2007)); *see also American Bell, Inc.*, 736 F.2d at  888-89

(applying similar elements); *see P&A Contr. Inc. v. Int'l Union of Operating Eng'Rs Local 825*,

19 F4th 217, 228 n.9 (3d Cir. 2021) (recognizing diversity among circuits for applicable alter ego

standard); *see also United Steelworkers of America v. Copperweld Steel Co.*, 230 F. Supp 383,

388 (W.D. Pa. 1964) (applying a "mere instrumentality" test examining similar factors).

"A finding of an alter ego situation is a factual one and must be supported by the record."

*Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 283 (3d Cir.

1983). "[A] claim requires a complaint with enough factual matter (taken as true) to suggest the

required elements." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

*Twombly*, 550 U.S. at 557). This requirement requests "'enough facts to raise a reasonable

expectation that discovery will reveal evidence of' the necessary element." *Id.* (quoting

*Twombly*, 550 U.S. at 555).[2]

---

[2]    *See Airgas USA, LLC*, 2026 U.S. Dist. LEXIS 39059, at *5 n.2 ("A judge is . . . neither
required to hunt down arguments [the parties] keep camouflaged, nor required to address
perfunctory and undeveloped arguments . . . . [T]o the extent that [Defendant] failed to develop
any additional argument[s] or provide any legal support for them, [it] has waived them.")

## IV.    ANALYSIS

In the FAC, Airgas uses both "Agency" and "Alter Ego" interchangeably throughout its allegations despite substantially different standards and factors.  *See* FAC ¶¶ 6, 40, 75 (stating each time that "IBT acted as an agent and/or alter ego of Local 773"). The consolidation of these theories was deemed fatal to Airgas in the Southern District of California.  *See Airgas USA, LLC v. Teamsters Loc. 542*, 2026 U.S. Dist. LEXIS 39059, at *5 n.2 (S.D. Cal. Feb. 25, 2026) ("As Plaintiff provides no further explanation or argument in support of its alter ego theory, the Court declines to address this issue.").

### A.    Agency

For the following three reasons, Airgas has failed to sufficiently establish liability under an agency theory. First, mere action or awareness of the local's conduct is insufficient to establish agency. Airgas alleges knowledge on behalf of IBT as a predicate for encouraging the conduct of Local 773.  *See* FAC ¶¶ 26, 42. However, mere knowledge or omission of intervention efforts is insufficient to establish agency. *See Wilkes-Barre Pub Co.*, 647 F.2d at 382; *Carbon Fuel Co.*, 444 U.S. at 215; *Brenner*, 927 F.2d at 1287. Moreover, Airgas fails to establish IBT's awareness of the majority of Local 773's conduct or of communications where they were not a party. FAC ¶¶ 41, 43-51,52, 53-56 (showing in ¶ 52 only communication stating "we righted the ship" at the Allentown location and honoring the extension, to which IBT representative merely showed appreciation for the update). Therefore, based on IBT's limited knowledge alone, there are not enough factual allegations in the FAC to support agency.

Second, the scope and contents of statements made by IBT are likewise insufficient to establish agency. The FAC contains allegations regarding several meetings and statements to show IBT instigated, supported, ratified, or encouraged Local 773's conduct.  *See* FAC ¶¶ 20-23,

29-30, 35, 36-38, 52. These can be ordered into the following categories: (1) a series of Zoom conferences with IBT and local union members, (2) the flyer distributed by IBT to Local 773, (3) a public statement by IBT pertaining to spreading the strike to multiple Airgas locations, and (4) a single text response by IBT to Local 773 leadership. *Id.* As to the Zoom conference calls, Airgas only alleges their titles, the attendees, and that they occurred – no content of these calls beyond their title is provided. *See* FAC ¶¶ 20-22, 27, 29-30, 35. For this Court to find that these Zoom calls amount to instigation or ratification, it would have to speculate about their contents, which is improper. *See Phillips,* 515 F.3d at 234 (stating the plaintiff has stated a plausible claim only if "the '[f]actual allegations . . . raise a right to relief above a speculative level.'") (quoting *Twombly*, 550 U.S. at 555). As to the flyer distributed to Local 773 and the public statement made by IBT, *see* FAC ¶ 23 (The flyer stated "YOU have the individual right" not to cross the picket line and "SOLIDARITY IS OUR STRENGTH."), ¶ 38 (IBT responded to a press inquiry: "[W]e previously extended picket lines to multiple Airgas locations."), they are insufficient under *Feather* and *United Mine Workers* because they do not directly affirm or implicate Local 773's conduct specifically; rather, they reference Local 701 or broader union conduct generally, which is insufficient to establish agency.[3] *See Feather*, 903 F.2d at 970; *United Mine Workers*, 259 U.S. at 394.  The flyer is also insufficient to establish agency since it had the legal purpose of informing Local 773 members of their rights under their CBA with Airgas.  *See C & K Coal Co.*, 537 F. Supp. at 490. As to IBT's text in response to an update from Local 773, *see* FAC ¶

---

[3]    In granting IBT's Motion to Dismiss in California, the court applied this scope argument to the same public comment made on July 22, 2025. *See* FAC ¶¶ 36; *see also Airgas USA, LLC*, 2026 U.S. Dist. LEXIS 39059, at *8 ("[N]othing in IBT's statement reflects such an intent. The July 22nd statement did not concern or mention [the local union] and there are no facts to otherwise indicate that IBT was instigating, supporting, or encouraging [the local union's] alleged picketing activities.").

52 ("Thank you for update Brother Heller, as you know 507 and 701 appreciated you and your members."), it only shows appreciation for the update and members, not any support for conduct itself, which is insufficient under the *Feather* and *United Mine Workers* standards. *See Feather*, 903 F.2d at 970; *United Mine Workers*, 259 U.S. at 394.

Third, Plaintiff's FAC concedes that the "Strike and Defense Fund" is well-established, and Airgas does not allege it was created in response to the events leading to this action. *See* FAC ¶ 57 (showing that the fund was in IBT's Constitution and that the procedure for disbursement was well-established). Moreover, funds were not guaranteed as application by the local and authorization by IBT was required, with the money going to the local union to distribute. *Id.* ¶ 58. The payments to Local 773 were not approved or distributed until after members already honored the Allentown picket line. *Id.* ¶¶ 61-62. Under *Gibbs* and *United Mine Workers*, established payments from the international- like the Strike and Defense Fund here- are insufficient to establish agency. *See Gibbs*, 383 U.S. at 738-39; *United Mine Workers*, 259 U.S. at 385. This fund is distinguished from *C & K Coal Co.* since it was not specifically created for illegal conduct. *See C & K Coal Co*, 704 F.2d 696.

For all these reasons, Airgas has not sufficiently pled agency, and IBT's Motion to Dismiss on this theory is granted.

### B.    Alter Ego

In support of its alter ego theory, Airgas cites a single case in its memorandum opposing the Motion to Dismiss. *See* Pl's. Resp. to Mot. Dismiss FAC 16 (citing *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967))). Airgas posits alter ego as a "tool of equity . . . to prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or

shield someone from liability for a crime." *Id.* (citing *Publicker Industries, Inc*, 603 F.2d at 1069). However, even in *Publicker Industries, Inc*, where both parties acted interchangeably throughout a transaction, the court nevertheless found no showing of alter ego, and ordered remand. *See Publicker Industries, Inc*, 603 F.2d at 1069-70 ("The trial court made no findings that the circumstances normally required for application of the alter ego theory were present here."). In *Publicker*, the court held that it was not clear if the trial court applied the doctrine correctly. *Id.* at 1069-70 ("It is not clear completely, however, whether the district court actually relied on an alter ego theory, or whether instead it invoked the term "alter ego" loosely . . . .").

When applying the rule for alter ego to the factual allegations of the FAC, there is insufficient information pled to create a plausible alter ego theory of liability against IBT. Instead of showing identical management, business purpose, operation, equipment, customers and supervision, or ownership, as required, *see Sheet Metal Workers' Int'l Ass'n Local Union No. 19*, 2013 U.S. Dis. LEXIS 32008, at *13-14, the FAC instead implicitly shows distinct separation of IBT and Local 773 throughout the pleadings, *see* FAC ¶¶ 20, 22, 25, 26, 29, 30, 35, 36, 38, 41-56 (showing a delineation of leadership during zoom conferences and similar separations for the creation of flyer, communications between parties, and the public statements). Airgas fails to otherwise allege identical management, business purpose, operation, equipment, customers and supervision, or ownership. *See generally* FAC (showing absence of remaining required elements).

Because Airgas has failed to delineate between agency and alter ego, and because Airgas has failed to plead a sufficient factual basis to demonstrate alter ego, this theory is insufficiently pled and IBT's Motion to Dismiss the alter ego theory of liability is granted.

## V.   CONCLUSION

Because Airgas used "Agency" and "Alter Ego" interchangeably throughout its allegations despite substantially different standards and, also, failed to allege sufficient facts to establish either agency or alter ego, IBT's Motion to Dismiss the First Amended Complaint is granted.  IBT is dismissed with prejudice.[4]

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4] This Court denies leave to file another amended complaint because Airgas failed to cure the pleading deficiencies after receiving notice of the same in the Opinion granting IBT's first Motion to Dismiss.  *See Randall v. Facebook, Inc.*, 718 F. App'x 99, 102 (3d Cir. 2017) (finding that the district court did not err when it dismissed the complaint without providing leave to amend because the plaintiff "had previously been permitted to amend his complaint after being advised of the foregoing defects"); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."), *cert. denied* 537 U.S. 1113 (2003).